1   VINCENT COX (State Bar No. 070511)
    vcox@lpsla.com
2   LEOPOLD, PETRICH & SMITH
    A Professional Corporation
3   2049 Century Park East, Suite 3110
    Los Angeles, California 90067-3274
4   Tel.: (310) 277-3333; Fax: (310) 277-7444

5   ALAN S. KAUFMAN (pro hac vice)
    ask@flsa.com
6   CHAMBERLAIN, KAUFMAN & JONES
    35 Fuller Road
7   Albany, New York 12205
    Tel.: (518) 435-9427; Fax: (518) 435-9102
8   Attorneys for Plaintiffs

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12
    **TINA R. HARO; JAMES A. PITILLO;** ) **CASE NO. CV-02-9587 CBM**
13  **JOHN R. BOYD; and others** )
    **similarly situated,** ) **MEMORANDUM IN SUP-**
14            **Plaintiffs,** ) **PORT OF PLAINTIFFS'**
         **v.** ) **MOTION FOR SUMMARY**
15                           ) **JUDGMENT (PARTIAL)**
    **CITY OF LOS ANGELES, a** )
16  **Municipal Corporation,** ) **DATE:      MAY 4, 2009**
              **Defendant.** )**TIME:      10:00 A.M.**
17                           ) **PLACE:     COURTROOM 2**
                             )**JUDGE:     Hon. Consuelo   B.**
18  _____) **Marshall**

19
                        **Table of Contents                    Pages**
20
Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Relevant Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      POINT I

      THE CITY HAS NOT MET ITS BURDEN OF PROVING THAT

      PLAINTIFFS ARE EXEMPT UNDER SECTION 207(K) . . . . . . . . . . . . . 3

A.  Dispatchers are not exempt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1.  Prior to this motion, the City itself did not view the dispatchers
        as "engaged" in "response" to emergencies or in "fire
        suppression." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    2.  Dispatching is a different skill from fire suppression.
        It is not necessary to be a trained firefighter to work as a
        dispatcher. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.  Dispatchers are not required to attend firefighting training. . . . . . 9

    4.  Dispatchers are not required to have any fire protective gear
        with  them when working and never handle fire fighting
        equipment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    5.  The City's likely arguments are without merit. . . . . . . . . . . . . . . 11

B.  Aeromedical Technicians are not exempt . . . . . . . . . . . . . . . . . . . . . . . 12

POINT II

THE STATUTE OF LIMITATIONS IS THREE YEARS . . . . . . . . . . . . . 16

POINT III

PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUES
    OF LIABILITY, STATUTE OF LIMITATIONS AND LIQUIDATED
    DAMAGES SHOULD BE GRANTED IN ALL RESPECTS . . . . . . . . . . 24

**Table of Authorities**

**Pages**

**Cases**

Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003), affirmed, 546 U.S. 21,

126 S. Ct. 514, 163 L. Ed. 2d 288 (2005) . . . . . . . . . 3,4,6,11,17,19,20,21 n.8

Bureerong v. Uvawas, 922 F. Supp. 1450 (CD Cal. 1996) . . . . . . . . . . . . . . . . . 20

Caldman v. State of California, 852 F. Supp. 898 (ED Cal. 1994) . . . . . . . . . . . 22

Chao v. A-One Medical Services, Inc., 346 F.3d 908 (9th Cir. 2003),

cert. denied, 541 U.S. 1030, 124 S. Ct. 2095,

158 L. Ed. 2d 710 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17,20,21

Chao v. Barbeque Ventures, LLC, 547 F.3d 938 (8th Cir. 2008) . . . . . . . . . . . . . 23

Cleveland v. City of Los Angeles, 420 F.3d 981 (9th Cir. 2005),

cert. denied, 546 U.S. 1176, 126 S.Ct. 1344,

164 L.Ed. 2d 58 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3,4,11,15

EEOC v. First Citizens Bank of Billings, 758 F.2d 397 (9th Cir.), cert. denied,

474 U.S. 902, 106 S. Ct. 228, 88 L. Ed. 2d 228 (1985) . . . . . . . . . . . . . . . 20

Glenn v. General Motors Corp., 658 F. Supp. 918 (D. Ala. 1987),

affirmed in part and reversed in part, 841 F.2d 1567

(11th Cir.), cert. denied, 488 U.S. 948, 109 S. Ct. 378,

102 L. Ed. 2d 367 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 n.7

Herman v. RSR Security Services, 172 F.3d 132 (2d Cir. 1999) . . . . . . . . . . . 17,20

Joiner v. Macon, 814 F.2d 1537 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 22

Karr v. City of Beaumont, 950 F. Supp. 1317 (E.D. Tex. 1997) . . . . . . . . . . . . . 17

Keeley v. Loomis Fargo & Co., 183 F.3d 257 (3d Cir. 1999), cert. denied,

cert. denied, 528 U.S. 1138, 120 S. Ct. 933,

145 L. Ed. 2d 649 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

King v. Bd. of Education, 435 F.2d 295 (7th Cir. 1970), cert. denied,

402 U.S. 908, 91 S. Ct. 1380, 28 L. Ed. 2d 649 (1971) . . . . . . . . . . . . . . . 22

Local 246 Util. Workers Union v. S. Cal. Edison Co.,

83 F.3d 292 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991),

cert. denied, 503 U.S. 936, 112 S. Ct. 1473,

117 L. Ed. 2d 617 (1992) (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,23

Martin v. Selker Bros., 949 F.2d 1286 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 17

McGavock v. City of Water Valley, 452 F.3d 423 (5th Cir. 2006) . . . . . . . . . . . . . 11

McLaughlin v. Richland Shoe, 486 U.S. 128, 108 S. Ct. 1677,

100 L. Ed. 2d 115 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

National Automatic Laundry and Cleaning Council v. Schultz,

443 F.2d 689 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Reich v. Bay, 23 F.3d 110 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sullivan v. City of Phoenix, 845 F. Supp. 698 (D. Ariz. 1993) . . . . . . . . . . . . . . . 22

Thomas v. Howard University Hospital, 39 F.3d 370 (D.C. Cir. 1994) . . . . . . . . . 21

Uffelman v. Lone Star Steel Co., 683 F.2d 404 (5th Cir.), cert. denied,

490 U.S. 1098, 109 S. Ct. 2448, 104 L. Ed. 2d 1003 (1989) . . . . . . . . . 18 n.7

Weaver v. City and County of San Francisco, No. C. 03-1589 SI, 2006

U.S. Dist. LEXIS 62650 (N.D. Cal. August 18, 2006) . . . . . . . . . . . . . . . . 15

**Statutes**

29 U.S.C. § 207 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 207(a) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S. C. § 207(k) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4,12

29 U.S.C. § 203(o) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S. C. § 203(y) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Regulations**

29 C.F.R. § 210 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 C.F.R. § 212 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 C.F. R. § 212(a) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 56(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 n.2

**Other**

Websters New Millennium Dictionary of English, Preview Edition . . . . . . . . . . . 6

1  VINCENT COX (State Bar No. 070511)
   vcox@lpsla.com
2  LEOPOLD, PETRICH & SMITH
   A Professional Corporation
3  2049 Century Park East, Suite 3110
   Los Angeles, California 90067-3274
4  Tel.: (310) 277-3333; Fax: (310) 277-7444

5  ALAN S. KAUFMAN (pro hac vice)
   ask@flsa.com
6  CHAMBERLAIN, KAUFMAN & JONES
   35 Fuller Road
7  Albany, New York 12205
   Tel.: (518) 435-9427; Fax: (518) 435-9102
8  Attorneys for Plaintiffs

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12  **TINA R. HARO; JAMES A. PITILLO;**   ) **CASE NO. CV-02-9587 CBM**
    **JOHN R. BOYD; and others**          )
13  **similarly situated,**               ) **MEMORANDUM IN SUP-**
                        **Plaintiffs,**   ) **PORT OF PLAINTIFFS'**
14           **v.**                       ) **MOTION FOR SUMMARY**
                                          ) **JUDGMENT (PARTIAL)**
15  **CITY OF LOS ANGELES, a**            )
    **Municipal Corporation,**            ) **DATE:        MAY 4, 2009**
16                        **Defendant.**  )**TIME:        10:00 A.M.**
                                          ) **PLACE:       COURTROOM 2**
17  _____ )**JUDGE:       Hon. Consuelo   B.**
                                          **Marshall**
18

19                    **Introduction**

20       This case is a follow up to <u>Cleveland v. City of Los Angeles</u>, 420 F.3d

21  981 (9th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1176, 126 S.Ct. 1344, 164 L. Ed. 2d

22  58 (2006).   Plaintiffs are employees of the City of Los Angeles Fire Department

23  who seek unpaid overtime and related relief under the overtime provisions of the

24  Fair Labor Standards Act, 29 U.S.C. § 207 (2006) ("FLSA").  The plaintiffs fall into

25  three categories: 1) those identically situated to plaintiffs in <u>Cleveland</u>, that is,

26  assigned to rescue ambulances; these claims have been settled and are no longer at

27  issue; 2) those who work as dispatchers in the City's downtown dispatch center

28  dispatching emergency equipment and personnel; and 3) those who work on rescue

                              -1-

1  ambulances and rotate monthly onto the "air ambulance" helicopters; these plaintiffs
2  are called "aeromedical technicians."[1]

3       The City treated the dispatchers and aeromedical technicians as "employee[s]
4  in fire protection" under 29 U.S.C. § 207(k) (2006), paying them overtime wages for
5  hours worked in excess of 204 in a 27 day work period rather than for hours worked
6  over 40 in a seven-day work week.  Plaintiffs claim the City cannot meet its burden
7  to demonstrate proper entitlement to the exemption and seek to be paid overtime for
8  hours worked in excess of 40 per work week, as required by 29 U.S.C. § 207(a)
9  (2006).

10       The parties now cross-move for summary judgment on stipulated facts on the
11  issues of liability, liquidated damages and the statute of limitations.[2]   As set forth
12  below, on the stipulated, and therefore, undisputed facts, plaintiffs are entitled to
13  summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).

14  <center>**Relevant Statutes**</center>

15       Under 29 U.S.C. §207(k), the higher overtime threshold may only be
16  used for "employee[s] in fire protection."   That phrase is defined in 29 U.S.C.
17  §203(y) (2006), which provides:

18      "Employee in fire protection activities" means an
19      employee, including a firefighter, paramedic, emergency
20      medical technician, rescue worker, ambulance personnel,
21      or hazardous materials worker, who-
22         (1) is trained in fire suppression, has the legal
23      authority and responsibility to engage in fire suppression,
24      and is employed by a fire department of a municipality,

25  _____

26     [1]Only the time spent on the air ambulance is at issue.  Time spent on rescue
27  ambulances has been settled.

28     [2]Should plaintiffs' prevail the parties would need to calculate damages.  Fed.
R. Civ. P. 56(d)(2).

1    county, fire district, or State; and

2         (2) is engaged in the prevention, control, and

3    extinguishment of fires or response to emergency

4    situations where life, property, or the environment is at

5    risk.

**Facts**

6

7    The parties have stipulated to the facts on which the cross-motions are based.

8    The full stipulation is being filed by the City.  Relevant facts are referenced in the

9    argument.

**ARGUMENT**

10

**POINT I**

11

**THE CITY HAS NOT MET ITS BURDEN OF PROVING THAT**

12

**PLAINTIFFS ARE EXEMPT UNDER SECTION 207(K).**

13

14    This case is controlled by Cleveland, supra, and also Alvarez v. IBP, Inc., 339

15    F.3d 894 (9th Cir. 2003), affirmed, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288

16    (2005).   As in Cleveland, the question is whether the City has met its burden of

17    proving that plaintiffs have the "responsibility to engage in fire suppression."

18    Cleveland reiterates the well established standard applied to employers'

19    claims of FLSA overtime exemption:

20         The FLSA is construed liberally in favor of employees;

21         exemptions "are to be narrowly construed against the

22         employers seeking to assert them. . . ."  Further, an FLSA

23         exemption will not be found "except [in contexts] plainly

24         and unmistakably within [the given exemption's] terms

25         and spirit."

26    420 F.3d at 988 (citations omitted).   It is the City's burden to demonstrate that

27    plaintiffs "plainly and unmistakably" fit within the claimed exemption.  Id.   See also

28    Alvarez v. IBP, Inc., 339 F.3d at 905 ("Following the Supreme Court's lead, we

-3-

1  have also read FLSA exemptions . . . tightly, . . . .").  In the absence of a "plain and
2  clear . . . fit" the court must construe an exemption "against the employer seeking to
3  assert it."  Id.

4        Under Cleveland, the term "responsibility to engage in fire suppression" in
5  section 203(y) must be given its "ordinary, contemporary, common meaning."  420
6  F.3d at 989.  Cleveland affirmed this Court's finding that, under this standard, cross-
7  trained paramedics assigned to rescue ambulances did not have the responsibility to
8  engage in fire suppression.   Under this standard, this Court also ruled in Cleveland
9  that plaintiffs holding the "desk jobs" of Quality Improvement Analysts were
10  improperly classified as exempt and the City did not appeal that holding.

11        In Alvarez, the Court held that the "ordinary, contemporary, common
12  meaning" of the term "clothes" in the FLSA, 29 U.S.C. 203(o) (2006), did not
13  plainly and unmistakably include protective gear workers were required to wear.
14  "[F]rom both a regulatory and common sense perspective, 'changing clothes' means
15  something different from 'donning required specialized personal protective
16  equipment.'" 339 F.3d at 905.

17        As discussed below, applying the applicable standard to the issues presented
18  here, construing the statute against the City, and using the ordinary and common
19  meaning of the statute, neither dispatchers nor aeromedical technicians plainly and
20  unmistakably have the "responsibility to engage in fire suppression," under
21  203(y)(1).

22        Applying the same standard,  dispatchers are also not plainly and
23  unmistakably "engaged in the prevention, control and extinguishment of fires or
24  response to emergency situations where life, property or the environment is at risk"
25  under 203(y)(2).

26        Therefore plaintiffs are not exempt under section 207(k) and must be paid
27  overtime for all hours worked over 40.

28  **A.  Dispatchers are not exempt.**

The ordinary, common meaning of the terms "responsibility to engage in fire suppression" and "engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk," do not encompass the work done by dispatchers.  Dispatchers sit before computer consoles in the basement of City Hall and receive telephone calls from the public. (3)[3]  The vast majority of the calls are medical in nature.  Some relate to fires and suspected fires. (99) After ascertaining the nature of the call, dispatchers dispatch the appropriate equipment and personnel to the scene.  (70-87) The initial equipment dispatched is pre-coded in the computers depending on the nature of the emergency. (Id.)

Under common, ordinary,  understanding, sitting in front of a computer and dispatching equipment and personnel to locations requested by callers is not "engaging in fire suppression" or "extinguishment."   Nor is it "respon[ding] to emergency situations."   Rather, it is the persons dispatched to the scene who are responsible for "responding to" and putting out the fire.

Dispatchers are no more engaged in fire suppression or "responding" to emergencies than the mechanics who fix and maintain the trucks or the citizen who calls in a fire.  While all are necessary to get the equipment and personnel to the scenes of possible emergencies, only the personnel on the scene are actually the "responders" and "engaged in fire suppression."   Further, dispatchers are no more engaged in fire suppression than paramedics assigned to ambulances who may be sent to fire scenes to stand by for medical duties.

Another term for an emergency worker such as a firefighter or paramedic is "first responder," which is defined as "a certified, often volunteer, emergency, medical, or law enforcement officer who is the first to arrive at an accident or disaster scene." Webster's New Millennium Dictionary of English, Preview Edition

---

[3]Numbers in parentheses refer to paragraphs of the joint stipulation of facts.

(v 0.9.7), accessed through Dictionary.com, "first responder."   Under the ordinary, common, understanding of the term, dispatchers are plainly not "responders." Dispatchers inform the first responders where the fire or other emergency is so the first responders can respond to it.

Section 203(y) read as a whole encompasses only persons who have responsibilities that include responding to emergency scenes.  The section uses terms such as "engage in fire suppression," "engaged in the . . . extinguishment of fires" and "response to emergency situations."   Not only is there no mention of dispatchers or dispatching, but no other language suggests that employees sitting in a basement miles from the scene fall within those terms.

That dispatchers are not within the ordinary understanding of the terms of section 203(y) is illustrated by the following:  If a hundred people were asked to write a caption under a picture of dispatchers at work in front of their computers, it is safe to say that not one caption would contain the words  "employees engaged in fire suppression" or "emergency responders" or even address the concepts.  Rather, the captions would likely include terms describing dispatching, which is plainly different from responding to the scene and engaging in fire suppression.  Because the words "engage in fire suppression," "engaged in fire prevention, control and extinguishment" and "response to emergency situations" do not "usually conjure images" of persons sitting in front of computer screens in a building miles from the emergency scenes, dispatchers do not come within the exemption.  Cf. Alvarez, supra, 339 F.3d at 905 ("The admonition to wear warm clothes does not usually conjure images of donning a bullet- proof vest or an environmental spacesuit.").

The result with respect to dispatchers should be the same as with the "desk jobs" of the Quality Improvement Analysts ruled non-exempt by this Court in Cleveland.  (161)  There are no facts presented on this motion that would make dispatchers at their desks  "plainly and unmistakably" within the exemption, while Quality Improvement Analysts at their desks are not.  On the contrary, the

1   undisputed facts on this motion overwhelmingly support the conclusion that

2   dispatchers are not exempt under the common, ordinary understanding of the terms

3   of section 203(y).

4   **1.  Prior to this motion, the City itself did not view the dispatchers as**

5   **"engaged" in "response" to emergencies or in "fire suppression."**  Up until

6   February 9, 2009, which is shortly before the stipulation of facts on which this

7   motion is based was entered into by the parties, the dispatchers were assigned to the

8   Bureau of Support Services and *not* the Bureau of Emergency Services.  (17)

9   According to the City's Manual of Operation, "the primary objective of the Bureau

10  of Emergency Services is the saving of life and property," and "All personnel

11  normally engaged in fire fighting, rescue, and EMS activities are assigned to the

12  Bureau of Emergency Services."[4]  (19-20)

13      The Bureau of Support Services – to which dispatchers were assigned until

14  just before this motion –  consists of the Supply and Maintenance Division, Fire

15  Facilities Division and Operations Control Division.  The "primary objectives of the

16  Bureau of Support Services are the specifications, preparation, maintenance and

17  repair of apparatus and equipment; the obtaining of warehousing and distribution of

18  supplies; the dispatching of resources and equipment to the scene of emergencies;

19  operation of the Department's 9-1-1 Public Service Answering Points (PSA)) and

20  Dispatch Center that dispatch resources and equipment to the scene of emergencies;

21  and the development, maintenance and repair of Fire Department Facilities." (18)

22      These official Fire Department policies make very plain that the Fire

23  Department itself – at least prior to this motion -- did not view dispatchers as

24  engaged in responses to emergencies or fire suppression: *All personnel* normally

25  engaged in fire fighting, rescue, and EMS activities are assigned to the Bureau of

26  _____

27      [4]Dispatchers are not assigned to the Bureau of Fire Prevention and Public

28  Safety, one of the objectives of which is the prevention of fires and the elimination
    of fire and life safety hazards in any building or structure.  (24)

Emergency Services."  It is the personnel assigned to the Bureau of Emergency Services who are "engaged" in fire fighting and EMS activities, not dispatchers.

Further, nothing in the Fire Department job description for dispatcher says anything about responsibility to engage in fire suppression or to respond to the scenes of emergencies.  Rather, according to the job description, dispatchers spend 60% of their time "processing medical and fire emergency incoming information," 30% dispatching appropriate medical and fire resources," and 10% "training."  (54)

Thus, rather than show that dispatchers are exempt,  Fire Department pre-existing documented policies do just the opposite.  They make clear that dispatcher job responsibilities are more aligned with the personnel who fix the trucks and maintain the buildings than with those who go to the scenes of emergencies and put out fires.  The City's own classification of the dispatchers makes it impossible to conclude that dispatchers plainly and unmistakably come within the terms of section 203(y).

**2.  Dispatching is a different skill from fire suppression.  It is not necessary to be a trained firefighter to work as a dispatcher.**  It is not necessary that a person graduate from the fire academy as a firefighter or be certified as firefighter in order to work as a dispatcher at OCD.  Some dispatchers are certified paramedics only and not trained or certified firefighters.  (26-28)  There are no differences in the job duties of dispatchers who are certified firefighters and those who are not.  (30)  Yet, while dispatchers who are not trained firefighters are paid overtime for all hours worked over 40 in a workweek, plaintiffs are not.  (12, 31) Thus, two dispatchers can work closely together, day in day out, alternately filling the call taker and resource controller positions, yet one is paid overtime for hours over 40 in a workweek and the other is paid overtime only for hours worked over 204 in a 27 day work period.

Since the training given to persons to become certified firefighters or paramedics does not include the training required to work as a dispatcher, all persons

accepted as dispatchers, after the passing the interview and test for the position, are sent for the identical dispatcher training, regardless of their previous training or work experience.  (33, 36)   Before being allowed to work as a dispatcher, a candidate is given ten weeks of training and then works 20 shifts with a preceptor. (35)

It is not even necessary to have worked as a dispatcher or a firefighter to become a floor captain in OCD.  (44, 46 )  There is currently one floor captain in OCD who is not a trained firefighter, but is a paramedic only.  (Id.)  Employees who promote to captain in OCD who have not previously been trained or worked as a firefighter or a dispatcher receive the same training given to all dispatchers.  (45) Under emergency conditions, floor captains may reconfigure the dispatchers working in the dispatch center and supervise the dispatchers, which can include ordering additional units to be dispatched into the field based on the type and severity of the incident.  (48)

These facts completely undercut any argument the City wishes to make that dispatchers are engaging in fire suppression or fire extinguishment or that training or experience in fire suppression is necessary to do the job of dispatcher.  Single function paramedics have no training or experience in fire suppression and are doing the identical job.  The reason is that dispatching is a separate job or skill from firefighting.  Dispatching therefore is not and cannot be within the common, ordinary meaning of the terms in section 203(y).

**3. Dispatchers are not required to attend firefighting training.**

After dispatcher training, dispatchers are required to serve a minimum of three years as a dispatcher.  (38)  After that, persons working as dispatchers may continue working as a dispatcher for as long as they choose, move back to a field assignment or take a promotion.  (Id.)  There is no system in place whereby dispatchers who are certified as firefighters are required to rotate back into the field and then back to OCD.  (30)  This means dispatchers can work many years solely as a dispatcher.

Firefighters working in the field regularly receive training in field firefighting skills.  Dispatchers are not required to attend such field fire training regardless of when or whether they graduated from the fire academy as certified firefighters or how many years they have been working as a dispatcher. (57)  In contrast to the lack of fire training, dispatchers are required to complete and pass the Emergency Medical Dispatch Class and maintain current Emergency Medical Technician, and Emergency Medical Dispatch Certifications. (55)  Dispatchers also receive ongoing training on the use of the dispatcher protocols, and how to perform the job of dispatcher on particular incidents such as river rescues and brush fires. (56)

In short, the City does not require that dispatchers have fire suppression training or keep current any previous fire suppression training.  Their required training is medical and dispatching skills only.   These facts further support the conclusions that dispatching is not firefighting, that dispatchers are not responsible to engage in fire suppression, and the City does not view dispatchers as responsible to engage in fire suppression.

**4.  Dispatchers are not required to have any fire protective gear with them when working and never handle fire fighting equipment.**  Dispatchers may leave their protective gear in their cars, lockers or at home. (58)  When performing their duties, dispatchers do not have with them and do not use self-contained breathing apparatus ("SCBA"). (59)   Dispatchers in OCD never handle fire fighting equipment such as trucks, hoses or ladders or  engage in ventilating roofs or rescuing persons from burning buildings. (60)  Dispatchers in OCD do not go into the field and engage in hazardous materials incidents or water rescue incidents. (61)

Dispatchers do not do the very things that conjure the image of engaging in fire suppression or responding to emergency scenes.

**5.  The City's likely arguments are without merit.**

The City is likely to argue that dispatchers are responsible to engage in fire

-10-

suppression and "respond" to emergencies because they speak with callers on the phone calling in emergencies, send the first responders to the emergencies, might give some advice safety related advice to callers before the first  responders arrive on the scene, and also interact with the first responders on the scene after they arrive. These arguments are insufficient to meet the City's burden of proof.

Plaintiffs must fit plainly and unmistakably within the statute. Cleveland and Alvarez hold that it is not enough for an employer to be able to spin arguments to justify how an employee might be considered to somehow fall within the terms of the statute.   This is what the City is attempting to do here.   For this reason, the City's argument clearly fails.

The City is likely to rely on McGavock v. City of Water Valley, 452 F.3d 423 (5th Cir. 2006).  Not only is McGavock clearly distinguishable, but its language and holding support plaintiffs here.  Plaintiffs in McGavock were firefighters who were

> actually called upon to extinguish, control, and prevent fires and to respond to emergency situations where life, property or the environment is at risk.  However, the firefighters spend more than 20% of their workweek engaged in dispatching duties as opposed to actual fire protection activities.

Id. at 424. Plaintiffs "concede[d] that they [met] the §203(y) definition," but argued that the 20% limitation on non-exempt work contained in 29 C.F.R. §212(a) was exceeded by their dispatching work and therefore they should not have been considered exempt under 207(k).  Id. at 427.  The Court held that both the definition of "employee in fire protection activities" set forth in 29 C.F.R. §553.210 and the 20% limitation on non-exempt activities set forth in §553.212  no longer applied because Congress had enacted its own definition of "employee in fire protection activities" in section 203(y) and had not included the 20% limitation in it.  Since plaintiffs conceded that they met the section 203(y) definition, the case was

1  dismissed.

2  The Court's holding in <u>McGavock</u>  does not support the conclusion that

3  section 203(y) includes dispatching within the definition of "responsibility to engage

4  in fire suppression."  Rather, both the Court's recitation of the facts and its holding

5  support the opposite conclusion.  The Court contrasted dispatching with fire

6  protection noting that "firefighters spend more than 20% of their workweek engaged

7  in dispatching duties *as opposed to actual fire protection activities.*"  (Emphasis

8  added).  This clearly confirms that the common ordinary meaning section 203(y)'s

9  terms do not encompass dispatching.

10  Further, if the Court had determined that dispatching was fire suppression

11  within the meaning of section 203(y), the Court would have had no need to hold that

12  the 20% limitation is no longer valid since all the plaintiffs' activity would have

13  fallen under section 203(y).

14  While the Court noted  that OPM had proposed a regulation that specifies that

15  firefighters performing dispatching functions are engaged in fire protection

16  activities, that was merely in the context of noting the need for updated regulations.

17  The Court did not pass on the issue of whether such a regulation would be consistent

18  with section 203(y) and the Court certainly did not pass on the facts presented in this

19  case.

20  In sum, <u>McGavock</u> supports plaintiffs here and is of no assistance to the City.

21  **B.  Aeromedical Technicians are not exempt.**

22  The Air Ambulance plaintiffs, known as "aeromedical technicians," also are

23  not properly treated as exempt under section 207(k) because they do not plainly and

24  unmistakably have the "the responsibility to engage in fire suppression."[5]

25  The City's Air Ambulance operations are regulated by the County Department

26

27  [5]Air Ambulance personnel, like those assigned to Rescue Ambulances, do

28  "respond to emergency situations where life, property, or the environment are at
 risk."

of Health.  (116)  County regulation Reference No. 418 requires that the flight crew of an air ambulance have Advanced Life Support training.  (118)  The regulation also provides that the flight crew "be immediately available and have as its primary responsibility the treatment and transport of EMS patients when the aircraft is available for EMS response for a given shift."  (119)

Consistent with the County requirements, the City's Manual of Operation designates the firefighter/paramedics assigned to the air ambulance as "aeromedical technicians" and states that their primary duties are to "provide[], direct[] and oversee[] patient care at the scene of EMS incidents during Air Ambulance transportation." In addition, aeromedical technicians perform "helitac duties associated with response to medical care of patients and at other times when these skills are required."  (109)

In short, similar to plaintiffs in Cleveland, the Air Ambulance  job is primarily medical.  The aeromedical technicians' work involves acting as medical first responders, assessing, treating and if necessary transporting the patient.  The crew may also need to rescue or extricate a patient from an accident scene either by landing the helicopter or by hoist.  (122)

Aeromedical technicians rotate working one month on Rescue Ambulance 90 and one month on the Air Ambulance.  (113)  The only real difference between the jobs is that during the time they are working on the Air Ambulance they are called upon to perform other activities in support of the operation of the Air Ambulance helicopter.

These helicopter duties are known as "helitac" duties.  (107-108)  In addition to the 12 aeromedical technicians who are trained in helitac duties, there are six firefighters at Fire Station 90 who are trained helitac crew members.  (112)  Since they are not paramedics they are not allowed to work on the Air Ambulance as aeromedical technicians but they are available to perform the helitac duties.  (Id.)

Because only the aeromedical technicians have paramedical training, the

1  aeromedical technicians spend the majority of their flight time performing medical
2  care at medical incidents.  (121)  On occasion the helicopter designated as the Air
3  Ambulance will be used for a function other than medical work.  These other
4  helicopter functions may on occasion include dropping water on brush fires and
5  transporting firefighters to high rise structure fires.  (121-131)  The Air Ambulance
6  helicopter is not dispatched to drop water on all brush fires to which Air Operations
7  responds.  In many instances, the Air Ambulance will not be dispatched but will be
8  reserved for use for medical incidents.  (126)  The Air Ambulance is normally,
9  though not always the last helicopter dispatched on a brush fire and the first
10  helicopter released to return to Air Ambulance status.  (Id.)

11      The duties of the aeromedical technicians, even when the Air Ambulance
12  helicopter is used on fire calls, do not require them to "engage in fire suppression."
13  When the Air Ambulance helicopter is dispatched to drop water on a brush fire, the
14  aeromedical technicians load hose and fittings on and off the helicopter (to be used
15  to fill the helicopter with water).  When sent to a "helispot," the location where
16  helicopters pick up water to drop on brush fires, the activities of the aeromedical
17  technicians are limited to support  activities related to filling the helicopter with
18  water and fuel and to helicopter safety.  (128)  The aeromedical technicians do not
19  go with the helicopter to drop water on the fire.  (Id.)  Also, every time any
20  helicopter is sent to the helispot, a supporting fire company is sent to the helispot to
21  provide fire protection.  (Id.)  The firefighters from the fire company also take over
22  the filling of the helicopter with fuel and water.  (Id.)  At that point the engine
23  company will substitute its hose for the Air Ambulance hose so the Air Ambulance
24  can be available for medical calls.  (Id.)  Aeromedical technicians (or any other
25  helitac trained person on scene) then oversee the helispot operations to assure safe
26  operations at the helispot because they are trained in helicopter safety.  (Id., 129)

27      If the Air Ambulance helicopter is used on a high rise fire, the aeromedical
28  technicians may be used to establish a secure landing site on top of the building,

-14-

provide medical care to any person in need of such care, evacuate persons off the roof of buildings, and safely transport the firefighters to the roof top, including helping them get off and on the helicopter safely.  (131)

The firefighters who are transported on the helicopter  to the high rise fire to fight the fire are required to have with them their full fire protective turn out gear. (131)   Aeromedical technicians are not required to have their full fire protective turnout gear with them on the Air Ambulance regardless of the particular assignment of the Air Ambulance helicopter.  (124)  They wear a Nomex flight suit, which is a one piece flight suit made of fire resistant material, and which is intended to provide aviation related  fire protection only.  (Id.)

Aeromedical technicians  "fall short of having the necessary 'real obligation or duty' to suppress fires" as required by <u>Cleveland</u>.  <u>Weaver v. City and County of San Francisco</u>, No. C 03-1589 SI, 2006 U.S. Dist. LEXIS 62650 (N.D. Cal. August 18, 2006), at *14.   Aeromedical technicians are never sent to the scene of a fire to engage in fire suppression.   The primary duties of the aeromedical technicians as required by County regulation, and as described by the Fire Department Manual of Operation, remain overwhelmingly medical.  As the Manual of Operation succinctly states, in addition to medical duties, the aeromedical technician "performs helitac duties associated with response to medical care of patients and at other times when these skills are required."  (109)  These helitac duties -- which they perform in their Nomex flight suit – constitute helicopter safety and support rather than fire suppression.

That helitac duties are not fire suppression is made very clear from the "Selection Criteria" for the position of aeromedical technician.  (133)   Not a single one of the job duties, skills, knowledge or abilities listed even suggest anything about fire suppression work.  Rather, what is listed in addition to medical duties, skills and knowledge are: "Helitac duties and helicopter support operations," "skills necessary to assign duties to Department personnel at the scene of helicopter ground

operations, helispot operations and in-flight," "knowledge of the safe use and operation of all helicopter support equipment, helicopter crew duties, both on the ground and in-flight," and "ability to manage helicopter ground operations safety, and directs [sic] others in the safe operation around Department helicopters."

For the aeromedical technicians to be exempt, their duties must fall plainly and unmistakably within the exemption.  The City has not met its burden in this regard.  Since the helitac activities of the aeromedical technicians do not fall plainly and unmistakably within the term "responsibility to engage in fire suppression" the City's claim of exemption must be denied.

## POINT II

## THE STATUTE OF LIMITATIONS IS THREE YEARS

The statute of limitations -- the period for which damages are recoverable -- in an FLSA case is three years back from the date of filing of a consent by a plaintiff when the violation is "willful."  29 U.S.C. §§255(a) and 260.[6]  Willful conduct for this purpose means "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); Chao v. A-One Medical Services, Inc., 346 F.3d 908, 918 (9th Cir. 2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2095, 158 L. Ed. 2d 710 (2004).  An employer who knows of a risk that its conduct is contrary to the law, but disregards that risk and proceeds anyway acts "wilfully."  Alvarez, supra, 339 F.3d at 908-909 (Three year statute applies "where an employer disregarded the very 'possibility' that it was violating the statute."), citing  Herman v. RSR Security Services, 172 F.3d 132, 141-142 (2d Cir. 1999); Karr v. City of Beaumont, 950 F.Supp. 1317, 1325 (E.D. Tex. 1997)

---

[6]The earliest consents specifically on behalf of dispatchers were filed in this case on March 20, 2006.  At the time those plaintiffs joined there were already existing plaintiffs litigating their ambulance claims in Haro who had also worked as dispatchers.

1  (Employer "showed reckless disregard for whether their conduct was prohibited by
2  the FLSA by having knowledge that they were bound by the FLSA and failing to
3  abide by its overtime provisions."); Martin v Selker Bros., 949 F.2d 1286, 1296 (3d
4  Cir. 1991).  Once an employer becomes aware of an FLSA issue, continuing a
5  noncomplying practice can be "reckless."  Reich v. Bay, 23 F.3d 110, 117 (5th Cir.
6  1994).   The employer must "take affirmative action to assure compliance."  Alvarez,
7  supra, 339 F.3d At 909.

8       In Chao, the Court held that the employer's prior FLSA violations, "even if
9  different in kind from the instant one and not found to be willful" put the employer
10  "on notice of other potential FLSA requirements."  346 F.3d at 919.

11      There can be no question that the City's conduct in this case is willful under
12  this standard.  The undisputed facts establish that for many years the City was aware
13  not only of the requirement that it be in compliance with the FLSA as to all of its
14  employees but also clearly aware of the requirement that FLSA exemptions be
15  construed narrowly against the employer and that an employee must fit plainly and
16  unmistakably within an exemption to be treated as exempt.  (See generally 136-176)

17      The City was also aware of the specific requirements of the 207(k) exemption
18  and the 1999 enactment of section 203(y) defining "employee in fire protection
19  activities." The City  litigated the meaning of this exemption in Cleveland and lost.
20  (159-161)  On July 3, 2002, this Court ruled that the City was in violation of section
21  207(k), including section 203(y), as to cross-trained paramedics assigned to rescue
22  ambulances and those plaintiffs who held "desk job" positions as Quality
23  Improvement Analysts.  (161)  The City did not appeal the decision as to the desk
24  job positions, and unsuccessfully appealed the decision as to paramedics assigned to
25  ambulances.  (161)

26      Throughout the years since the FLSA became applicable to the City, the City
27  consulted with its lawyers about other positions and its employees attended FLSA
28  seminars.  (136, 141, 150, 152)  The City had extensive dealings with plaintiffs'

1  union on FLSA issues.  (136, 140, 141, 148, 151, 153)  Yet at no time prior to this

2  case – even after losing <u>Cleveland</u> in 2002 –  did the City  perform an analysis of

3  whether dispatchers working at computer consoles or the aeromedical technicians

4  were properly exempt under section 207(k).   Nor did the City take any steps to

5  obtain an opinion from DOL, although it took such steps as to other employees.

6  (137, 145-163, 165)

7         By no means can the City maintain that the employees at issue on this motion

8  were plainly and unmistakably within the terms of the 207(k) exemption.   At a

9  minimum, the law required that the City undertake a legal analysis of the positions to

10 determine whether there was a basis for exemption.    The City was certainly on

11 notice of the need to do this.   Instead, the City simply ignored the issues presented

12 on this motion.  Such conduct is willful under the law.[7]

13       The law does not allow an employer to insulate itself against a finding of

14 willfulness simply by claiming that its employees attended  FLSA seminars and had

15 books about the FLSA and that nobody complained prior to the suit.  Rather, the law

16 requires the employer, especially when the employer is on notice of the FLSA

17 requirements,  to take steps to conform its conduct  to the FLSA requirements as to

18

---

19       [7]Even if the City had consulted a lawyer about the claimed exemptions, it

20 would not insulate it from a finding of willful violation. "If an employer could

21 escape the 'reckless disregard' standard solely by obtaining a green light from its

22 lawyers, it would be far too easy for a defendant to circumvent the requirements of

23 the Act. . . . It seems that the better law would require, at a minimum, good faith

   reliance on a colorable legal position." <u>Glenn v. General Motors Corp.</u>, 658

24 F.Supp. 918, 927 n.3 (D. Ala. 1987), <u>affirmed in part and reversed in part</u>, 841

25 F.2d 1567 (11th Cir.), <u>cert. denied</u>, 488 U.S. 948, 109 S. Ct. 378, 102 L. Ed. 2d 367

   (1988); <u>Uffelman v. Lone Star Steel Co.</u>, 863 F.2d 404, 409 (5th Cir.), <u>cert. denied</u>,

26 490 U.S. 1098, 109 S. Ct. 2448, 104 L.  Ed. 2d 1003(1989) ("seeking of legal

27 advice does not "ipso facto" establish non-willful conduct.).   Certainly, here,

   where the City was aware of the law and the need to be in compliance, had lawyers

28 and resources available to consult but did nothing, its conduct is willful.

all employees.   The employer may not simply wait for a lawsuit and then claim that it was not aware of the specific  FLSA claims asserted.   <u>See</u> <u>Alvarez</u>, <u>supra</u>, 339 F.3d at 909:

> IBP was on notice of its FLSA requirements, yet took no affirmative actions to assure compliance with them.  To the contrary, IBP's actions may more properly be characterized as attempts to evade compliance, or to minimize the actions necessary to achieve compliance.  IBP "could easily have inquired into" the meaning of the relevant FLSA terms and the type of steps necessary to comply therewith. *Herman*, 172 F.3d at 142.  It failed to do so.  The district court appropriately applied §255's three-year statute of limitations to IBP's willful conduct.
>
> (Footnote omitted).

Here, the undisputed evidence shows that the City was not only familiar with its obligations under the law, but had previously litigated and lost a case on the same exemption it claims applies to the plaintiffs on this motion.   The law required that the City undertake affirmative steps to assure that it was properly applying the exemption to these other plaintiffs.  The City did nothing.  Since the City failed to meet the required standard and took no affirmative steps to be in compliance, the three year statute of limitations should be applied.

## POINT III

**PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES.**

In addition to unpaid overtime, a successful FLSA plaintiff is also entitled to "liquidated damages" in the full amount of the unpaid overtime compensation.  29

1  U.S.C. §216(b).   Chao, supra, 346 F.3d at 919-920.  Liquidated damages are not
2  punitive but compensation for losses employees might suffer caused by failure of the
3  employer to pay lawful wages.   Bureerong v. Uvawas, 922 F.Supp. 1450, 1479
4  (C.D. Cal. 1996), citing EEOC v. First Citizens Bank of Billings, 758 F.2d 397, 403
5  (9th Cir.), cert. denied, 474 U.S. 902, 106 S. Ct. 228, 88 L. Ed. 2d 228 (1985).
6  "Double damages are the norm, single damages the exception."  Chao, 346 F.3d at
7  920, citing Local 246 Util. Workers Union v. S. Cal. Edison Co., 83 F.3d 292, 297
8  (9th Cir. 1996).   Liquidated damages are "mandatory" unless an employer shows
9  that it acted in "subjective 'good faith" and "had objectively 'reasonable grounds'
10 for believing that the acts or omissions giving rise to the failure did not violate the
11 FLSA." Alvarez, supra, 339 F.3d at 909, quoting Herman, supra, 172 F.3d at 142.
12 The employer's burden is "difficult."  Alvarez, supra, 339 F.3d at 910.

13       Subjective good faith requires the employer to show an honest intention to
14 ascertain the law and follow it.   EEOC v. First Citizens Bank of Billings, supra, 758
15 F.2d at 403.   The employer must show that it took affirmative steps to ascertain and
16 follow the law *prior to the commencement of the suit*.  Spinning arguments in the
17 litigation as to why the employer might not be liable are not sufficient to avoid
18 liquidated damages.  See Alvarez, supra, 339 F.3d at 910:

19            IBP "failed to take the steps necessary to ensure [its] []
20            practices complied with [FLSA].  *Herman*, 172 F.3d at
21            142.  Mistaking ex post explanation and justification for
22            the necessary affirmative "steps"to ensure compliance, IBP
23            offers no evidence to show that it actively endeavored to
24            ensure such compliance.  Instead it reiterates the value of
25            its read of *Reich*, of USDOL litigation strategy, and of its
26            four-minute compliance plan.  IBP's efforts do not
27            constitute evidence of taking the steps necessary to ensure
28            FLSA compliance, and, without such evidence, we cannot

1          say the district court abused its discretion in awarding

2          liquidated damages.

3          The objective reasonableness element of the defense to liquidated damages

4    requires the employer to demonstrate that the reason for not paying the required

5    overtime was based on a legal argument objectively grounded in the law.  This

6    means that the employer had a legal basis for  believing that its actions in not paying

7    overtime were in compliance with the law.   Thomas v. Howard University Hospital,

8    39 F.3d 370, 373 (DC Cir. 1994).

9          The City cannot meet its burden of demonstrating that liquidated damages

10   should not be awarded.  First, a finding of willfulness for purposes of the statute of

11   limitations precludes a finding of good faith for liquidated damages purposes.  Chao,

12   supra, 346 F.3d at 920.

13         Second, even if the Court were to find that the City's conduct was not willful,

14   the City cannot show that it had an honest intention to ascertain the law and follow

15   it.[8]   The evidence is that the City knew the law but ignored it.  This Court held in

16   Cleveland in July, 2002, that plaintiffs working on rescue ambulances and working

17   "desk jobs" were not exempt.   The Court also awarded liquidated damages to

18   plaintiffs.  Yet, notwithstanding that it lost Cleveland and was assessed liquidated

19   damages, after that date, the City did nothing to investigate or analyze its exemption

20   of plaintiffs working very similar jobs to the plaintiffs in Cleveland  – dispatchers

21   working at computer consoles, and plaintiffs working on the air ambulance  –  much

22   less to bring itself in compliance.  (See generally 161-168) This alone requires that

23   liquidated damages be awarded.

24         An employer is expected to look for, find, and heed judicial authority and the

25   failure to do so requires the award of mandatory liquidated damages.  See Caldman

26   v. State of California, 852 F.Supp. 898, 901 (E.D. Cal. 1994) ("An employer's

27

28         [8] A finding that the employer did not act willfully does not preclude an
     award of liquidated damages.  Alvarez, supra, 339 F.3d at 910.

1  failure to heed administrative rulemaking or precedent with respect to the FLSA

2  deprives the employer of the good faith defense.")  Sullivan v. City of Phoenix, 845

3  F.Supp. 698, 704 (D. Ariz. 1993); accord Joiner v. Macon, 814 F.2d 1537, 1539

4  (11th Cir. 1987); King v. Bd of Education, 435 F.2d 295, 298 (7th Cir. 1970), cert.

5  denied, 402 U.S. 908 (1971); National Automatic Laundry and Cleaning Council v.

6  Schultz, 443 F.2d 689, 697 (D.C .Cir. 1971)("[W]here the advice of counsel is given

7  in the face of an administrative questioning of the situation it has been held not to be

8  sufficient in and of itself to establish "reasonable grounds" for believing there is no

9  violation.")   Here, the judicial authority the City was required to heed was handed

10  directly to the City in the form of a judgment against it.

11      Third, the City had no objective reasonable basis for believing it was in

12  compliance.  Since the City did not do a legal analysis of the positions at issue prior

13  to this case, the City is unable to point to any objective legal basis for believing prior

14  to the suit that it was in compliance with the law.   Of course, had the City done an

15  analysis and applied the proper standards for determining exemptions in general and

16  the section 207(k) exemption in specific, the City could only have concluded that

17  plaintiffs were not exempt.

18      Any reliance by the City for good faith purposes on the arguments it makes on

19  this motion as to why plaintiffs are exempt must be rejected.   As with willfulness,

20  reliance on arguments spun in the litigation in an attempt to avoid liability is not a

21  basis to avoid  liquidated damages.  See Martin v. Cooper Electric Supply Co., 940

22  F.2d 896, 908 (3d Cir. 1991), cert. denied, 503 U.S. 936, 112 S. Ct. 1473, 117 L. Ed.

23  2d 617 (1992) (Failure of employer to take affirmative steps to ascertain and comply

24  with the law before DOL investigation precluded finding of reasonable good faith).

25  A mere  "legitimate, good faith dispute" as to whether the employees at issue were

26  exempt from the FLSA overtime requirements is insufficient. See Cooper Electric,

27  940 F.2d at 910:

28          [W]e hold here that in order to assist an employer's case

-22-

against liquidated damages, "legal uncertainty . . . must
pervade and markedly influence the employer's belief;
merely that the law is uncertain does not suffice." . . .
Legal uncertainty must have actually led the employer who
violated the Act to believe that it was in compliance at the
time of the violation.  Here there is no record evidence that
Cooper undertook its illegal pay practices reasonably
believing them to be legal because of some pervasive legal
uncertainty concerning the exemption status of its
employees.

Nor can the City claim reliance on the fact that neither the union nor any individual employee raised the issues until this case.  Id.; Keeley v. Loomis Fargo & Co., 183 F.3d 257, 270 (3d Cir. 1999), cert. denied, 528 U.S. 1138, 120 S. Ct. 983, 145 L. Ed. 2d 933 (2000) (Employer's "longstanding practice of not paying overtime and its union's apparent acquiescence in this practice are insufficient to establish good faith. . . ."); Chao v. Barbeque Ventures, LLC, 547 F.3d 938, 942 (8th Cir. 2008).

For all these reasons,  plaintiffs' motion awarding plaintiffs liquidated damages should be granted.

**CONCLUSION**

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF LIABILITY, STATUTE OF LIMITATIONS AND LIQUIDATED DAMAGES SHOULD BE GRANTED IN ALL**

1    **RESPECTS.**

2

3    March 30, 2009                    s/ Alan  S. Kaufman

4                                      CHAMBERLAIN, KAUFMAN & JONES

5                                      Attorney for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28