VINCENT COX (State Bar No. 070511)
vcox@lpsla.com
LEOPOLD, PETRICH & SMITH
A Professional Corporation
2049 Century Park East, Suite 3110
Los Angeles, California 90067-3274
Tel.: (310) 277-3333; Fax: (310) 277-7444

ALAN S. KAUFMAN (pro hac vice)
ask@flsa.com
CHAMBERLAIN, KAUFMAN & JONES
35 Fuller Road
Albany, New York 12205
Tel.: (518) 435-9427; Fax: (518) 435-9102
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TINA R. HARO; JAMES A. PITILLO; JOHN R. BOYD; and others similarly situated,<br>      Plaintiffs,<br>  v.<br><br>CITY OF LOS ANGELES, a Municipal Corporation,<br>      Defendant. | CASE NO. CV-02-9587 CBM<br><br>**MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: MAY 4, 2009<br>TIME: 10:00 A.M.<br>PLACE: COURTOOM 2<br>JUDGE: Hon. Consuelo B. Marshall |

## Introduction

Plaintiffs submit this memorandum in reply to the City's opposition to plaintiffs' motion for summary judgment and in further support of plaintiffs' motion.

## POINT I

## THE CITY'S ARGUMENTS DEMONSTRATE THAT THE CITY HAS NOT MET ITS BURDEN OF SHOWING THAT PLAINTIFFS ARE PLAINLY AND UNMISTAKABLY WITHIN SECTION 207(k).

1

After two rounds of briefing it is clear the City has not and cannot meet its burden of proof. The City's strained arguments demonstrate that plaintiffs are not plainly and unmistakably exempt under the ordinary, common meaning of section 203(y), which is the standard for FLSA exemption. Cleveland v. City of Los Angeles, 420 F.3d 981 (9th Cir. 2005), cert. denied, 546 U.S. 1176, 126 S. Ct. 1344, 164 L. Ed. 2d 58 (2006).

**A. Dispatching is not "engaging in fire suppression."**

Rather than arguing that dispatchers have the "responsibility to engage in fire suppression," the term actually used by section 203(y), City argues that dispatching "qualifies" as, or "constitutes," a "fire suppression activity." See, e.g., City's response brief, p. 7. The City seeks, in effect, to have the Court ignore the statute at issue.

The City's argument that dispatching "constitutes a fire suppression activity" is not based on a narrow reading of 203(y) and the ordinary, common meaning of the words of section 203(y) as required by Cleveland, but on regulations that are no longer in effect, never were in effect, or play no role in interpreting section 203(y) in this case.

The City ignores the logical inconsistency in its argument: on the one hand, relying on McGavock v. City of Water Valley, 452 F.3d 423 (5th Cir. 2006) – which holds that 29 C.F.R. § 553.210 was replaced by section 203(y) and is now "obsolete" – while, on the other hand, arguing that 29 C.F.R § 553.210 supplies the meaning of section 207(k). The City cites no law for the astounding proposition that in interpreting sections 203(y) and 207(k) the Court should rely on the obsolete regulations Congress replaced with section 203(y). Instead, the City simply pretends that 29 C.F.R. §553.210 still applies, remarkably referring to it as the "current" regulation (City's response brief, p. 8), and fills its briefs with repeated citations to it.

The City fails to address McGavock's holding that dispatching is **not** fire

suppression, and ignores the fact that McGavock did not rely on the obsolete regulations to supply the meaning of section 203(y).  If the City's reliance on the obsolete regulations had any merit, McGavock would have held that dispatching is within section 203(y) and cited the regulations.  Instead, McGavock ruled the regulations obsolete, did not hold that dispatching is fire suppression and said explicitly that dispatching is different from fire suppression.[1]  Thus, the City's statement that plaintiffs need to "refute" McGavock (City's response brief, p. 7, n.3) makes no sense.  McGavock supports plaintiffs.[2]

      Likewise, the City's contention that "DOL's expansive definition of fire suppression activities is entitled to deference" makes no sense.  City's response brief, p. 8.  There is no "DOL definition."  Deference cannot be paid to an obsolete regulation.  Furthermore, in interpreting the overtime exemption at issue, this Court may not interpret the statute "expansively."  Exemptions are to be "narrowly construed" against the employer.  Cleveland, 420 F.3d at 988.  The City's urging of an "expansive" reading indicates that the City can prevail only by seeking to have the Court apply a standard contrary to the proper standard to be applied to the City's exemption claim.

      The City tries to fashion an argument that dispatching is fire suppression by

---

[1] It appears that anything a Court of Appeals opinion says that the City does not agree with is either a "stray" or "wry" comment.  See City's response brief, p. 7, n. 3, and p. 11.  Plaintiffs do not rely on "stray" words in McGavock, but on its holding and the words used by the Court to explain it.

[2] The City's citation to McGavock and Schmidt v. County of Prince William, 929 F.2d 986 (4th Cir. 1991), throughout its brief is grossly misleading.  For the reasons plaintiffs have previously pointed out, it is not accurate or fair to say that those two cases have "provid[ed] that dispatching work satisfies Section 207(k)," (City's response brief, p. 3, 19), or "described that dispatcher work by sworn personnel satisfies Section 7(k)" (City's response brief, p. 1, 21), or "held that dispatching duties satisfy Section 7(k) (City's response brief, p. 7).

3

arguing that the definition of the word "suppression" "says nothing about proximity." City's response brief, p. 9.  But in order to do this the City must ignore the ordinary meaning of the very words of the City's quoted definition, which notes that suppression means "to put an end to, esp[ecially] by force" or "to hold back."  Id.  Dispatchers do not put an end to fires or hold them back by force or otherwise.  These things can only be done by persons on the scene.[3]

The City attacks plaintiffs' reference to the "image conjuring" reasoning used by the Ninth Circuit in Alvarez v. IBP, Inc., 339 F.3d 894, 905 (9th Cir. 2003), affirmed, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005), to determine the ordinary meaning of words used in the FLSA.  According to the City, the Ninth Circuit was merely making a "wry comment" not to be taken as "a canon for interpreting exemptions."  City's response brief, p. 11.  But that reasoning is one of the methods the Court used to reach its understanding of the ordinary, common meaning of the exemption at issue in Alvarez.  Plaintiffs are not aware of any basis to disregard the reasoning of Ninth Circuit cases in the resolution of this case, especially where the Court's task is identical.

The City also attacks the specific imagery used by plaintiffs as applied to the facts of this case.  City's response brief, p. 11.  Perhaps plaintiffs could have posed the image more directly and in a manner more consistent with the use of the technique in Alvarez: when asked to conjure an image of persons "engaged in fire suppression," no one would think of dispatchers.  The ordinary, common meaning of the words "engaged in fire suppression," that is, the image conjured by the words, encompass the firefighters at the scene of the fire, but not dispatchers at their computer consoles.

---

[3]The City twice states that dispatchers "control" fire engines.  City's response brief, pp. 9, 12.  They do not.  Dispatchers tell firefighters assigned to fire engines where the emergency is,  but dispatchers do not control fire engines and certainly do not control fire engines at the scenes of fires, where firefighters who ride to the fire on the engines engage in fire suppression, i.e., put the fire out.

4

1  The City claims that the "organizational placement of the dispatchers is
2  irrelevant for purposes of 7(k)," contending that only the actual job duties control.
3  City's response brief, p. 12. But this argument, as with much of the City's brief,
4  both ignores the law and misses the point of plaintiffs' argument. The City's
5  placement of dispatchers in the "support" Bureau, and not in the Bureau in which
6  employees who "engage in firefighting" work (19-20),[4] shows both that
7  dispatchers have no firefighting responsibility as a matter of fact, and that the
8  ordinary, common understanding of the words "responsibility to engage in fire
9  suppression" do not include "support" personnel such as dispatchers. Surely, that
10 the City itself described the job and the organizational placement of dispatchers as
11 **distinct from** those who "engage in fire fighting," should carry significant weight
12 in determining whether plaintiffs have the "responsibility to engage in fire
13 suppression" as that term is commonly understood.

14  The City ignores the inconsistency of contending on page 12 of its brief that
15 it is the job duties that control the result and at the same time contending on page
16 13 that it is "misleading" for plaintiffs to point out that nothing in the dispatcher
17 job descriptions in City documents include any activities commonly understood to
18 be fire suppression.

19  The City next claims that, because, according to the City, dispatching is
20 "engaging in fire suppression," none of the facts plaintiffs' offer showing that
21 dispatching is not fire suppression are relevant. City's response brief, p. 13.
22 These facts include that plaintiffs do not go to fires scenes, do not carry personal
23 protective gear, are not required to maintain firefighting training, and that
24 dispatcher training is separate from training to be a firefighter. The City's
25 contention simply begs the question and ignores the test to be applied. The reason
26 the facts offered by plaintiffs are relevant to the issue before the Court is because it

---

[4]Numbers in parentheses refer to paragraphs of the joint stipulation of facts.

5

is the ordinary, common understanding of the words of the statute that controls. Only if you depart from the ordinary, common meaning of the words do things such as going to the scene of the fire, wearing firefighting gear and being trained as a firefighter and maintaining firefighter training become "irrelevant" to determining whether someone has the "responsibility to engage in fire suppression.[5]

**B. Dispatchers are not "engaged in response" to emergency situations within the meaning of section 203(y).**

The City contends that talking on the telephone brings dispatchers within the term "engaged in . . . response to emergency situations where life, property, or the environment are at risk." Again, this could be so only if the ordinary, common meaning of the words of the statute is ignored. Persons calling the Fire Department are not looking for someone to talk to, they are looking for someone to "respond" to the emergency, that is, to go to the scene and handle the situation. That is not dispatchers. Exemptions are not to be "teased out" of the language of the statute by offering theoretical, alternate interpretations; instead, statutes must be narrowly construed, and the employees' exempt status must appear plainly and unmistakably. The City's proposed reading of section 203(y) in this respect, as in others, does not satisfy this standard.

The City' response to plaintiffs' discussion of the term "first responder" as an illustration of the common meaning of the term "engaged . . . in response to emergency situations" is nonsensical. City's response brief, p. 12. Plaintiffs did not suggest that only the first persons to arrive on the scene of an emergency would be exempt. Plaintiffs were simply noting that the word "responders" refers to

---

[5]The City attempts to minimize the illustrative factors listed in Cleveland. Although the Court's focus in Cleveland was on the word "responsibility," it is clear the factors have equal bearing on determining the meaning of the entire phrase "responsibility to engage in fire suppression." 420 F.3d at 990.

those going to the scene.  Instead of addressing this contention, the City focused on the word "first."

The City's argument with respect to dispatchers essentially comes down to the assertions that "the dispatcher's performance is essential for a fire to be suppressed," and "dispatchers' work is crucial to suppression of a fire," and "the Fire-Department cannot make an on-scene response without them."   City's response brief, pp. 9, 10.   No one disputes that dispatchers do important work, but doing important work is not the test for exemption.  Nor is merely being a fire fighter and working for a fire department.  Instead, Congress specifically limited the exemption to those trained firefighters who have the "responsibility to engage in fire suppression" and who are engaged in "response" to emergency situations. Dispatchers do neither.

The undisputed facts overwhelmingly support the conclusion that under ordinary, common understanding, dispatchers do not come within section 203(y). The City is left to scramble to explain away all of these facts.  Because this is so, under the standard of law required to be applied, plaintiffs must prevail.

**C.  Air ambulance personnel are not plainly and unmistakably exempt.**

The City argues that the helicopter support activities of the air ambulance plaintiffs constitute engaging in fire suppression by comparing them to the "support activities" listed in 29 C.F.R. §553.210(a).  City's response brief, p. 17 and 18.   But as noted by McGavock, the City itself, and the obsolete DOL regulation itself,  "support activities" are not fire suppression.  While certain "support activities" were covered under DOL's regulations, those regulations are no longer in effect.   Nothing in the plain language of section 203(y) brings support activities within the definition.

The City points to a page of a position description that states that 5% of the job of "a dedicated aeromedical emergency/rescue flight crewmember" is "fire suppression activities."  City's response brief, p.18. But this document was created

7

prior to the time the aeromedical technicians were assigned to the unit in 2000. (133) The document does not explain in any respect what those alleged fire suppression duties are. In fact, there is not single mention or description of any specific fire suppression activity in any of the remaining pages of Exhibit B. All specific duties are described as either medical or helitac. As the City notes, the parties have stipulated to the facts as to what the air ambulance plaintiffs do, and none of those activities under common understanding constitute fire suppression.

In fact, the very document the City points to completely undercuts the City's argument in this case and supports plaintiffs. On the first page of the "position description," the page before the page cited by the City, under the first listed percentage, it states "performs Helitac duties and helicopter support operations." Under this heading are listed all the activities the City now asserts constitute "fire suppression," including water filling operations and fueling. Again, this shows even the creator of this document did not view helicopter support activities as "fire suppression." Since there are no activities other than the helicopter support activities offered by the City as allegedly constituting "fire suppression," the mere recitation of the words "fire suppression" with nothing more in a document created before the assignment of any of the plaintiffs to the unit has no significance.

As with dispatchers, the City has failed to show that the air ambulance plaintiffs fall plainly and unmistakably within the exemption the City seeks.

## POINT II

**THE CITY'S ARGUMENTS WITH RESPECT TO THE STATUTE OF LIMITATIONS AND LIQUIDATED DAMAGES HAVE NO SUPPORT IN THE LAW.**

With respect to the statute of limitations and liquidated damages, without making any attempt to address the cases cited by plaintiffs, the City, for the most part, merely repeats the arguments in its moving brief, all of which are without

merit as a matter of law, as set forth in plaintiffs' moving brief and brief in response to the City's motion.

The City is unable to point to any "affirmative steps to assure compliance" as required by the law. The City's claimed efforts to learn about the FLSA do not excuse its failure to take steps to come into compliance with respect to the positions at issue. Rather, it makes its failure reckless. Alvarez, 339 F.3d at 908-09.

The City claims that it should not be held to have acted recklessly because it made a "wrong choice under the Act." City's response brief, p. 21. But the City made no choice at all other than to ignore its obligation under the law. It made no effort prior to this case to assess its compliance with respect to the positions at issue, even though it was plainly aware of the 7(k) issue and the need to be in compliance. Merely waiting to be sued and defending a lawsuit is not an affirmative step to assure compliance. Alvarez, 339 F.3d at 909.

The City claims that there was nothing "that should have placed the City on notice" that it was in violation of the law as to plaintiffs. City's response brief, p. 22. The City also claims there is no case that requires that it do a "specific legal analysis as to the dispatchers and air ambulance personnel." These arguments ignore the law. Plaintiffs need not prove that the City was on notice of a claim on behalf of plaintiffs, an opinion letter from DOL, or a case specific to plaintiffs' claim in order to recover for a third year of damages. It is the employer's obligation to be in compliance with the FLSA as to all of its employees. An employer cannot wait until there is a prior decision or DOL opinion letter precisely on point before taking steps to come into compliance. Once the employer is on notice of potential FLSA requirements, as the City admits it was here, the employer must act affirmatively. Alvarez, 339 F.3d at 909. The City did nothing here and is liable for a third year.

The City's attempt to distinguish the Court's ruling on Quality Improvement

9

Analysts from dispatchers therefore carries no weight. City's response brief, p. 22. There is no requirement in the law that prior litigation be precisely on point in order for it to serve as the basis for a third year of liability. Established law does not allow employers to draw fine distinctions between jobs in order to avoid a third year of liability. The mere existence of the prior litigation is enough to put the City on notice of its obligation to be in compliance. That there was a position at issue in prior litigation that was even somewhat similar only strengthens plaintiffs' case.

The City's arguments to avoid the imposition of liquidated damages are equally unavailing and do not satisfy the City's "difficult" burden. Alvarez, 339 F.3d at 910. It is not sufficient for the employer to show that it made efforts to ascertain the law generally while making no effort to ascertain the law and comply with it with respect to the particular positions at issue. If that were the case, an employer could simply attend some FLSA seminars and buy some treatises and never pay liquidated damages. The City must show that, prior to the lawsuit, it took steps to determine in good faith that there was an objective basis in the law for believing the positions at issue were exempt. There is no such proof here. For all the reasons set forth in plaintiffs' moving brief, liquidated damages are mandatory.

## CONCLUSION

Plaintiffs' motion for summary judgment on the issues of liability, statute of limitations, and liquidated damages should be granted in all respects.

April 27, 2009            s/Alan S. Kaufman
                          CHAMBERLAIN, KAUFMAN & JONES
                          Attorneys for Plaintiffs